# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erica Victoria,                                      :
                  Petitioner          :
                                      :
              v.                           :    Nos. 1809 and 1810 C.D. 2014
                                        :    SUBMITTED:  April 24, 2015
Unemployment Compensation                            :
Board of Review,                                     :
                  Respondent          :

**BEFORE:**    **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
                   **HONORABLE RENÉE COHN JUBELIRER,** Judge
                   **HONORABLE PATRICIA A. McCULLOUGH,** Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                  **FILED:  October 14, 2015**

Erica Victoria (Claimant) petitions for review of two orders of the Unemployment Compensation Board of Review (Board) dismissing her appeals as untimely pursuant to Section 501(e) of the Pennsylvania Unemployment Compensation Law (Law).[1]  After review, we vacate and remand.

---

[1] Section 501(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 821(e), states:

> (e) Unless the claimant . . . files an appeal with the board, from the determination contained in any notice required to be furnished by the department . . . within fifteen calendar days after such notice . . . was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts

**(Footnote continued on next page…)**

Claimant initially filed for and began receiving unemployment compensation benefits in May 2013, after being discharged from her employment with ISS Facility Services (ISS). In December 2013, Claimant qualified for emergency unemployment compensation benefits (EUC).[2] According to Claimant, at the time of her separation from employment with ISS and for at least five years prior thereto, she worked as an independent contractor cleaning the offices of Sherlock Investigations, and reported weekly income of $100.00 during the benefit period. The claim records show that because "multiple employers" were indicated, the Allentown Unemployment Compensation Service Center (Service Center), sent an Employer's Notice of Application and an Employer's Questionnaire to the purported employer, Sherlock Investigations, in February 2014. The documents returned by the purported employer, Sherlock Investigations, indicated that Claimant was not and had never been an employee, had cleaned the company's office for years, and was provided with a 1099 at the end of the year. C.R. Items 2 and 4. The Service Center requested additional information from Claimant, leaving a recorded message for Claimant to call the service center.[3] C.R. Item 5. After no response was received, on March 26, 2014, the Service Center sent the following six Notices of Determination to Claimant's correct mailing address:

---

**(continued…)**

set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

[2] Section 4001(d)(2) of Title IV of the Supplemental Appropriations Act of 2008 (EUC Act), 26 U.S.C. § 3304 note, provides that eligibility for EUC benefits is based on state law on eligibility for unemployment compensation benefits.

[3] On or about March 5, 2014, a representative from the Service Center left a recorded message for Claimant requesting additional information (her 1941 C and 2012 Schedule C forms) and for Claimant to call the service center. Then, on March 17, 2014, the Service Center sent Claimant a Form UC-997, Request for Information, requesting a copy of her 2012 Schedule C form and asking Claimant to call the office within seven days. *See* C.R. Items 5 and 7.

1) A determination that Claimant was ineligible for benefits under Section 402(h) of the Law, 43 P.S. § 802(h), which provides for an exclusion where the claimant is engaged in a sideline business;

2) A determination under Section 804(a) of the Law, 43 P.S. § 874(a), establishing a fault overpayment of benefits in the amount of $7,037;

3) A determination under Section 801(b) of the Law, 43 P.S. § 871(b), that Claimant would be penalized 30 weeks of benefits as a result of the fault overpayment;

4) A determination denying Claimant EUC benefits under Section 4001(b) of the EUC Act, 26 U.S.C. § 3304 note;

5) A determination establishing a $315 fraud overpayment under Section 4005 of the EUC Act, 26 U.S.C. § 3304 note;

6) A determination under Section 801(b) of the Law, 43 P.S. § 871(b), and Section 4005 (a)(1) of the EUC Act, that Claimant would be penalized 4 weeks of benefits as a result of the EUC overpayment.

C.R., Item 9.[4] The notices all stated that the last day Claimant could appeal the determinations was April 10, 2014. On the same day the six notices were mailed,

---

[4] The first three notices pertain to Claimant's eligibility and receipt of benefits under the Pennsylvania Unemployment Compensation Law and form the basis for Appeal No. 14-09-B-5592. The remaining three notices pertain to Claimant's eligibility and receipt of emergency unemployment compensation benefits under the EUC Act and form the basis for Appeal No. EUC-14-09-B-5587. The first four of these notices are in the Certified Record at Item 9. Apparently, due to the fact that the fifth and sixth notices were vacated by the Service Center via its March 31, 2014 letter to Claimant and were later reissued on April 1, 2014, only the reissued determinations are in the certified record at Item 11. However, reference to the original fifth and sixth notices can be seen in the claim records. *See* C.R. Item 1. To avoid confusion and for ease of reference, we will designate these determinations in the order they appear above along with **(Footnote continued on next page…)**

Claimant allegedly faxed a copy of her 2012 Schedule C to the Service Center.[5] Then, on March 31, 2014, the Service Center sent Claimant a Letter to Vacate Determination, which stated that:

> WHEREAS, on 3/26/2014, the [Service Center] issued a Notice of Determination under Section 4005(A)(B)(C), 801(B) of the Pennsylvania Unemployment Compensation Law in the case of ERICA VICTORIA . . . and
>
> WHEREAS, the [Service Center] wishes to review its determination; and
>
> HEREBY, the [Service Center] vacates the Notice of Determination shown above and, if necessary, another determination will be issued pending a further review of all facts ascertained in this case.

C.R. Item 10.[6]  The very next day, the Service Center issued two revised determinations.[7]  The last day to take an appeal from these revised determinations was April 16, 2014.

---

**(continued…)**

the date mailed, *e.g.,* the first through the fourth followed by the date they were mailed, March 26, 2014; and the fifth and the sixth followed by the date they were reissued, or April 1, 2014.

[5] While we could not find this document in the certified record, the claim records related to her EUC claim show the following notations:

> 140326 SGA CLM TO FAX SCHEDULE C
> 140326 SGA VERIFIED CLMT WHO GAVE ME PERMISSION
> TO S/W PAT DIMM, FRIEND

C.R. Item 1.

[6] Although Pennsylvania's Unemployment Compensation Law does not have a Section 4005, the Board argues that only the fifth and sixth notices of determination, relating to Claimant's EUC claim, refer to Section 4005 of the EUC Act, 26 U.S.C. § 3304 note, and, therefore, are the determinations referred to in the March 31, 2014 Letter to Vacate.

[7] These notices determined that a fraud overpayment in the amount of $316 had been established under Section 4005 of the EUC Act, 26 U.S.C. § 3304 note, and imposed four penalty weeks under Section 801(b) of the Law, 43 P.S. § 871(b), with respect to Claimant's
**(Footnote continued on next page…)**

4

On April 30, 2014, after both appeal deadlines had passed, a Notice of Financial Determination Revised was issued, notifying Claimant that she was financially eligible for benefits with respect to her original claim for unemployment compensation benefits filed May 19, 2013.[8]

Claimant filed appeals from the March 26, April 1, and April 30, 2014 notices of determination on May 30, 2014. At the hearing before the referee, Claimant appeared *pro se* with an interpreter, and with her friend, Patricia Dimm, whom Claimant had turned to for assistance sometime after receiving the notices. Claimant sought to elicit testimony from Ms. Dimm because "she was the one who helped me through the process." Hearing of July 14, 2014, Notes of Testimony (N.T.) at 1. However, the referee did not allow Ms. Dimm to testify, explaining that:

> I cannot have somebody testify who just helped you through the process. It would have to be a witness who would be able to offer relevant firsthand testimony to the facts of this case.
> . . . .

---

**(continued…)**

EUC claim, the only change being an increase in the amount of the overpayment, from $315 to $316. C.R. Item 11.

[8] This revised notice states:

> This financial determination alone does not entitle you to benefits. A review of your employment history and present status must also be made to determine whether you meet all of the eligibility requirements specified in the Law.

*See,* Claimant's Petitions for Appeal from Determination with Attachments, dated 5/30/14, C.R. Item 13. Claimant attached this notice to her petition for appeal, it is not elsewhere in the certified record. This revised notice informed Claimant that her weekly benefit rate was $271; that her benefit year began May 19, 2013, and ended May 17, 2014; that her maximum benefit entitlement was $7,046; and that the last day to timely appeal this determination was May 15, 2014. Claimant's appeal from this determination was designated Appeal No. 14-09-B-5580. *See* Hearing of July 14, 2014, Notes of Testimony (N.T.), at 3-4.

You can't have somebody just assist you throughout participating in today's hearing. The issue today deals with whether or not you filed a timely appeal. You are the party who filed the appeal. Therefore, it is relevant to your testimony only here today as to whether or not the appeal was filed timely. That would be the only testimony that the Referee will be accepting throughout today's hearing.

*Id.* at 1-2. The referee then informed Ms. Dimm that she was present only as an observer, whereupon Ms. Dimm stated that, "I did more than help her through the process . . . I don't know if she knows how to answer the questions, but I didn't help her file the claim. She brought it to me and that's when I realized it was late and I explained and I helped her file the claim that (inaudible). So I don't know if she knows how to answer it fully." *Id.* at 2. Through the interpreter, Claimant then testified that she filed her appeal late "[b]ecause I did not read English. I did not understand. And every time I receive any letter, I (inaudible) her [Patricia Dimm] because she's the one helping me." *Id.* at 8. When asked by the referee why she did not contact the unemployment compensation office for assistance, Claimant testified that she had "no idea if they were able to help me with that" and that, "I didn't know the content of that letter. I thought it was one of those letters they send you all the time." *Id.* at 8-9. Claimant explained further that:

When I went to see her [Patricia Dimm] . . . she was very, very sick and I didn't want to tell her anything so I went to seek some help from my nephew. He speaks English and he speaks Spanish. And then he just said that the unemployment only - - they were going to pay me just $35 more and that was the purpose of the letter. And then I asked him do I owe $35 and he did not tell me what really is. And then I went to see her [Patricia Dimm] and she clarified and told me what was happening in my case.
  . . . .

6

> When my nephew said that I owed $35, I called the unemployment team and they say that I was late. Something about my appeal. But I did not understand what they were saying. And that's the moment when I went to see [Patricia Dimm] and then she told me exactly what was happening.

*Id.* at 9. As to each of the appeals, Claimant's response was the same, that she "was ignorant," that she "didn't know," and that she filed late because Ms. Dimm "was very sick and I didn't want to bother her." *Id.* at 10.

The referee found that copies of all of the notices were sent to Claimant's last known post office address; that these notices were not returned by postal authorities as being undeliverable; that Claimant did not file an appeal on or before April 10, 2014 or on or before April 16, 2014; that Claimant did not file her appeals until May 30, 2014; and that Claimant "was not misinformed nor in any way misled regarding the right of appeal or the need to appeal." Referee's Decision/Order, Appeal Number EUC-14-09-B-5587, July 16, 2014, Findings of Fact Nos. 6-9 at 1-2; Referee's Decision/Order, Appeal Number 14-09-B-5592, July 16, 2014, Findings of Fact Nos. 5-8 at 1-2.[9] Thereafter, Claimant appealed to the Board, which affirmed both decisions. This appeal followed.

On appeal to this court, Claimant raises the following issues: 1) whether the Letter to Vacate Determination mailed on March 31, 2014, vacated all

---

[9] The record shows that Claimant attempted to appeal the April 30, 2014 Notice of Financial Determination along with the March 26 and April 1, 2014 notices, and the referee questioned Claimant regarding the untimeliness of this appeal. *See*, N.T. at 8-9. However, the referee never made any findings of fact or conclusions of law with respect to this determination, but apparently dismissed the appeal, noting on the first page of the hearing transcript that, "14-09-B-5580 (Did Not Appeal)." C.R. Item 17. Claimant did not appeal this decision either before the Board or this court and acknowledges in her brief that the referee "dismissed [her] appeal of the [April 30, 2014] Notice of Financial Determination" and that "[that] decision is not at issue on this appeal." Claimant's Brief at 6.

of the determinations issued on March 26, 2014, because it was vague and lacked specificity as to which determination it intended to vacate; 2) whether the March 31, 2014 Letter to Vacate was so misleading as to constitute a breakdown of the administrative process warranting allowance of her *nunc pro tunc* appeal*;* 3) whether the referee's refusal to permit Claimant's witness to testify denied her a full and fair hearing; and 4) whether the underlying notice of determination finding her ineligible for benefits issued March 26, 2014, was erroneous in light of the subsequent April 30, 2014 revised Notice of Financial Determination that Claimant was eligible for unemployment compensation benefits under the Law.

In order to reach a proper resolution of the issues before us, we will address Claimant's final issue first. Claimant argues that the revised determination issued on April 30, 2014, in which she was determined to be eligible for benefits, in essence, superseded the previous determinations sent on March 26 and April 1, 2014, which had determined her ineligibility and established the overpayments and assessed penalty weeks. She contends that the Service Center intended to vacate those adverse determinations when it sent out its March 31 letter and that even if, as the Board contends, it was only intended to vacate the determinations establishing a fraud overpayment (fifth notice issued 4/1/14) and assessing penalty weeks (sixth notice issued 4/1/14) pursuant to the EUC Act, because it was misleading and confusing, it constitutes a breakdown in the administrative process warranting her late appeal. *Cook v. Unemployment Comp. Bd. of Review,* 671 A.2d 1130 (Pa. 1996). As to the merits of her appeal, Claimant avers that because she provided the Service Center with her 2012 Schedule C to support that her self-employment qualified as a sideline business, and the unemployment authority apparently agreed that she was indeed eligible for benefits as evidenced by the

8

revised determination, then it follows that the prior determinations are invalid and any attempts to collect a fault overpayment "are without any legal foundation." Claimant's Brief at 17. After review, we are constrained to agree.

Section 501(e) of the Law provides that a claimant must appeal a determination within fifteen calendar days after it was mailed to her last known post office address or such determination will be final. 43 P.S. § 821(e). The Service Center may issue a revised notice of determination within the appeal period if no appeal has been filed. *Garza v. Unemployment Comp. Bd. of Review,* 669 A.2d 445, 447 (Pa. Cmwlth. 1995). The Service Center may also, in the alternative, issue a letter vacating the initial determination within the fifteen day appeal period if no appeal has been filed, and thereafter, issue a revised determination. *Larry Pitt & Assoc., P.C. v. Unemployment Comp. Bd. of Review,* 712 A.2d 827, 829 (Pa. Cmwlth. 1998). However, the Service Center may not issue a revised notice of determination after the appeal period has expired; the determination becomes final and the Board loses jurisdiction to consider the matter. *Pennsylvania Tpk. Comm'n v. Unemployment Comp. Bd. of Review,* 991 A.2d 971, 974 (Pa. Cmwlth. 2009) [citing *Vereb v. Unemployment Comp. Bd. of Review,* 676 A.2d 1290 (Pa. Cmwlth. 1996)]. The statutory time limit for filing an appeal is mandatory in the absence of fraud or manifestly wrong or negligent conduct of the administrative authority, and the claimant bears a heavy burden to justify an untimely appeal. *Blast Intermediate Unit #17 v. Unemployment Comp. Bd. of Review,* 645 A.2d 447, 449 (Pa. Cmwlth. 1994). A *nunc pro tunc* appeal may be allowed where extraordinary circumstances involving fraud, some breakdown in the administrative process or non-negligent circumstances caused the delay. *Cook,* 671 A.2d at 1131.

In this case, apparently because "multiple employers" were indicated and because the Service Center did not have sufficient information "to show whether claimant's earnings in regular employment exceeded the net profit from the self-employment," Claimant was initially determined to be ineligible for benefits pursuant to Section 402(h) of the Law. First Notice, issued 3/26/14, C.R. Item 9. After issuing the March 26 determinations, the Service Center then sent Claimant the letter to vacate followed by the April 1 determinations.

We find persuasive a recent decision by this court, *Walsh v. Unemployment Compensation Board of Review,* (Pa. Cmwlth., No. 1248 C.D. 2012, filed May 13, 2013), 2013 Pa. Commw. Unpub. LEXIS 374. There, the claimant received an initial determination that she was ineligible for benefits and filed an appeal. Thereafter, based on information received from employer only, the service center issued a second determination that she was ineligible pursuant to Section 402(b) of the Law, 43 P.S. § 802(b). That determination indicated that claimant voluntarily quit her employment for unknown reasons and that there was insufficient information to determine whether she had necessitous and compelling reasons to do so. The claimant did not appeal the second determination, based on her understanding that all issues relating to her eligibility would be resolved in her appeal from the first determination. After a hearing, the referee reversed the first determination, and in his decision, addressed not only whether claimant was ineligible for failing to follow reporting requirements (which was the specific issue in that appeal), he also addressed the mistakes made by the service center and the circumstances of claimant's separation from her employment (issues seemingly related to the second determination). Employer did not appeal; however, when the claimant's benefits stopped as a result of her failure to appeal the second

10

determination, she filed a late appeal. The referee dismissed the claimant's appeal as untimely and the Board affirmed, reasoning that it was the claimant's own misunderstanding that caused her to file a late appeal. On appeal to this court, the claimant argued that:

> the manner in which the Service Center handled her separation from employment with Employer caused confusion regarding the necessity to appeal the second notice of determination . . . [and that] the mishandling of her unemployment compensation matter constituted a breakdown in the administrative process, such that *nunc pro tunc* relief is warranted.

*Id.* slip op. at 10; at *13-*14. We agreed with the claimant, concluding that she had properly reported her temporary, part-time employment with employer and that the service center had mistakenly attributed these earnings to multiple employers, thus resulting in the initial determination of ineligibility. The service center "then compounded the mistake, when . . . it issued the second . . . determination, finding Claimant to be ineligible for yet another improper reason." *Id.* slip op. at 12; at *15. We reasoned that as a result of the service center's mishandling of her claim, the claimant was understandably confused which led to "misstep[s] in her attempts to navigate her way through the Service Center's errors." *Id.* slip op. at 13; at *18-*19. We therefore held that these circumstances constituted a breakdown in the administrative process and allowed the claimant's untimely appeal.[10]

---

[10] *See also Carr v. Unemployment Comp. Bd. of Review,* (Pa. Cmwlth., No. 662 C.D. 2014, filed December 19, 2014), 2014 Pa. Commw. Unpub. LEXIS 728 (the Department's conduct contributed to employer's confusion, as its unexplained failure to respond to employer's timely appeal from claimant's earlier application for benefits coupled with the timing of claimant's attempts to re-open an earlier claim and also simultaneously apply for workers' compensation **(Footnote continued on next page…)**

Similarly, here we believe that the Service Center's mishandling of her claim constitutes a breakdown in the administrative process warranting a *nunc pro tunc* appeal. However, despite the fact that both appeal periods had expired on April 10 and 16, respectively, the Service Center, without apparent authority to do so, *see, e.g.*, *Pennsylvania Turnpike Commission*, issued the revised determination now holding Claimant was not ineligible for benefits under Section 402(h) of the Law.

Thus, while it would appear that denial of the EUC claim and related penalty week and fraud overpayment assessments remain extant, the current status of Claimant's claim for unemployment compensation benefits is entirely unclear.

Accordingly, we vacate the orders of the Board and remand for a determination and/or clarification as to which benefits have been denied and which have been granted along with the status of any fraud overpayment and penalty week determination, and for an appeal, *nunc pro tunc,* from any determinations as to which Claimant is aggrieved.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

Judge McCullough concurs.

_____

**(continued…)**
benefits, all contributed to the situation confronting employer and constituted sufficient grounds to allow *nunc pro tunc* relief, citing both *Walsh* and *Boettcher v. Unemployment Compensation Board of Review,* (Pa. Cmwlth., No. 549 C.D. 2013, filed October 21, 2013), 2013 Pa. Commw. Unpub. LEXIS 778).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erica Victoria,                                         :
                              Petitioner                :
                                                        :
                    v.                                  :     Nos. 1809 and 1810 C.D. 2014
                                                        :
Unemployment Compensation                               :
Board of Review,                                        :
                              Respondent                :

## **O R D E R**

AND NOW, this 14th day of October, 2015, the orders of the Unemployment Compensation Board of Review in the above-captioned matter with respect to Appeal No. EUC-14-09-B-5587 and Appeal No. 14-09-B-5592, are hereby VACATED.  We REMAND the matter to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge